UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | No. 1:20-cr-298 |
| v. : | (J. Rambo) |
| DANIEL GUTMAN, and : | |
| BENJAMIN GUTMAN, : | |
| Defendants : | |

FILED
HARRISBURG, PA

INDICTMENT

NOV 18 2020

THE GRAND JURY CHARGES:

PER _____mw_____
DEPUTY CLERK

COUNT 1
(Conspiracy to Defraud United States and
Commit Offenses Against the United States)

Introduction

1. At times material to this Indictment, the defendants, DANIEL GUTMAN and BENJAMIN GUTMAN, were brothers who owned and operated Gutman Brothers, LTD (Gutman Brothers), a livestock exporting business in Maryland and South-Central Pennsylvania.

2. At times material to this Indictment, Dr. Donald Yorlets was a Pennsylvania licensed and United States Department of Agriculture (USDA) accredited veterinarian.

1

3. At times material to this Indictment, "Veterinarian X" (not his real name) was a Pennsylvania licensed and USDA accredited veterinarian.

**The United States Department of Agriculture**

4. The United States Department of Agriculture plays a vital role in ensuring the free flow of agricultural trade by keeping U.S. livestock free from pests and diseases. The USDA certifies that millions of agricultural and food products shipped in interstate and international commerce meet domestic and foreign requirements. This process relies heavily upon the professional services of USDA accredited veterinarians.

**Bovine Disease Testing**

5. The USDA requires cattle transported in interstate and foreign commerce to be tested for certain diseases specified by the government of the destination state or country, including Bovine Tuberculosis, Brucellosis, Bovine Leucosis, and Bovine Viral Diarrhea. Bovine Tuberculosis and Brucellosis are communicable diseases that can be transmitted under certain circumstances to humans.

6. Bovine Tuberculosis is tested for by what is known as a Caudal Fold test which must be administered by a USDA accredited veterinarian who injects a tuberculin substance under the skin of the animal. The veterinarian must then check the animal for an adverse reaction 72 hours later.

7. Brucellosis, Bovine Leucosis and Bovine Viral Diarrhea are tested for by submitting a specimen of the animal's blood to an USDA accredited laboratory for analysis. Each specimen must be drawn by or under the direct supervision of an USDA accredited veterinarian. Once the veterinarian draws the blood, he places it in a sterile specimen tube and labels it with the unique identification number for that animal, which is found on the cow's tattoo or ear tag.

8. The Pennsylvania Department of Agriculture operates a USDA accredited laboratory in Harrisburg, PA for the testing of bovine disease, known as the Pennsylvania Veterinary Laboratory (PVL). Once the testing is complete the PVL provides the veterinarian with a report indicating whether each sample submitted was positive or negative for the particular disease tested.

## Certificates of Veterinary Inspection (CVI)

9. Animals shipped in interstate commerce and to Puerto Rico must be transported with a Certificate of Veterinary Inspection (CVI). The Certificate must be issued by a USDA accredited veterinarian who verifies that each animal tested negative for the bovine diseases specified by the government of the destination state or Puerto Rico.

## International Certificates of Veterinary Inspection (ICVI)

10. Cattle exported to foreign countries must be transported with an International Certificate of Veterinary Inspection (ICVI). The Certificate must be issued by a USDA accredited veterinarian who verifies that each animal tested negative for the bovine diseases specified by the government of the destination country.

## USDA Endorsement of the ICVI

11. In the case of the export of an animal to another country, the certifying USDA accredited veterinarian must submit the International Certificate of Veterinary Inspection (ICVI) and supporting documents, including the laboratory test results, to the USDA for review by a USDA Endorsement Officer. If found to be in order, the ICVI is

numbered, counter-signed, and embossed with a USDA seal. A copy of the USDA endorsed ICVI must then accompany the animals during transport to the foreign country.

### Unique Antibody Profile Testing and The NVSL Laboratory

12. Each cow has a unique Antibody Profile in its blood. While it is theoretically possible two adult cows could have the same antibody profile, the probability of a random match between two or more cows is extremely small.

13. The USDA's National Veterinary Services Laboratory (NVSL) in Ames, Iowa conducts unique Antibody Profile testing of cattle blood.

14. Between 2017 and 2020, the Pennsylvania Veterinary Laboratory (PVL) in Harrisburg sent thousands of bovine blood specimens to the NVSL for Antibody Profile testing. The specimens had been submitted to the PVL by Dr. Yorlets and Veterinarian X for bovine disease testing on behalf of the defendants. Out of 1,069 specimens tested by the NVSL, only 122 samples had unique Antibody

5

Profiles. As such, only 11.4% of the blood specimens tested were genuine.

**The Conspiracy**

15. Between in or about August of 2016 and in or about April of 2020, in the Middle District of Pennsylvania and elsewhere, the defendants,

**DANIEL GUTMAN and BENJAMIN GUTMAN**,

did knowingly and willfully combine, conspire and agree with one another, Dr. Yorlets and others, both known and unknown to the Grand Jury, to defraud the United States Department of Agriculture and to commit any offense against the United States; to wit, False Statements, a violation of Title 18, United States Code, Section 1001, and Wire Fraud, a violation of Title 18, United States Code, Section 1343.

16. The defendants conspired to defraud the United States Department of Agriculture and commit the crime of False Statements by submitting false International Certificates of Veterinary Inspection to a USDA Regional Endorsement Officer in Harrisburg, PA for endorsement. The International Certificates of Veterinary Inspection

were false in that they represented that each animal listed on the Certificate had been tested for bovine diseases when they had not.

17. The defendants also conspired to commit the crime of Wire Fraud and defraud the buyers of their cattle by falsely representing in International Certificates of Veterinary Inspection that all of the animals listed on the Certificates had been tested for bovine diseases when they had not.

## Overt Acts in Furtherance of the Conspiracy

18. On various occasions, the defendants entered into contracts for the sale of cattle to buyers in Puerto Rico, Canada, Mexico and Qatar. Many of the sales involved hundreds of animals. For example, in November of 2016 the defendants sold 380 cows to a buyer in Mexico for $684,200 and in April of 2018 the defendants exported 2,900 cows to Qatar for $5,346,711.

19. In order to satisfy their customers' orders, the defendants purchased cattle from domestic sources and temporarily boarded the animals on farms the defendants operated in South-Central Pennsylvania.

20. In order to obtain the necessary Certificates of Veterinary Inspection for the transport of the animals, Dr. Yorlets and the defendants submitted thousands of blood specimens to the PVL Laboratory in Harrisburg for bovine disease testing between November of 2016 and February of 2020.

21. However, blood was not drawn from each animal. Dr. Yorlets and the defendants only drew blood from a small group of animals they knew to be disease free and falsely represented to the PVL that the blood was taken from a larger group of animals. Thus, the same blood was repeatedly submitted to the PVL Laboratory for many different animals.

22. After the PVL Laboratory furnished Dr. Yorlets with reports showing the animals were disease free, Yorlets issued Certificates of Veterinary Inspection for the cattle even though most of the animals had not been tested. Dr. Yorlets then provided the false Certificates to the defendants so they could ship the animals to their buyers.

23. Dr. Yorlets also issued Certificates of Veterinary Inspection that falsely represented that thousands of cattle had tested negative for Bovine Tuberculosis when, in fact, Yorlets did not administer the tests.

24. In February of 2020, the defendants caused Veterinarian X, who was unaware that many of the samples were disingenuous, to submit hundreds of blood specimens to the PVL Laboratory for bovine disease testing.

25. Between November of 2016 and February of 2020, the defendants caused Dr. Yorlets to submit 10 International Certificates of Veterinary Inspection, and caused Veterinarian X to submit 3 International Certificates of Veterinary Inspection to the USDA for endorsement by a USDA Endorsement Officer. The 13 Certificates falsely represented that approximately 3,400 animals had been tested for certain bovine diseases when, in fact, most of the animals had not been tested. The defendants then used the endorsed International Certificates to export the animals to Mexico, Canada, and Qatar.

26. On various occasions, the defendants caused the buyers of their cattle to send interstate and international wire transfers totaling

$7,484,579 to Gutman Brothers bank accounts at the Peoples Bank in York, PA for the purchase of the animals.

27. The submission of each false International Certificate of Veterinary Inspection to the United States Department of Agriculture (USDA) specified in Counts 2 to 14 constitute an additional act in furtherance of the conspiracy.

**All in violation of Title 18, United States Code, Section 371.**

**THE GRAND JURY FURTHER CHARGES:**

## COUNTS 2 - 14
### (False Statements)

28. For purposes of Counts 2 thru 14 of this Indictment, the allegations set forth in paragraphs 1 - 14 and 18 - 26 are incorporated herein.

29. On or about the dates set forth below, in the Middle District of Pennsylvania and elsewhere, the defendants,

**DANIEL GUTMAN and BENJAMIN GUTMAN,**

in a matter within the jurisdiction of the executive branch of the Government of the United States, did knowingly and willfully falsify, conceal, and cover up by any trick, scheme, or device a material fact; did make materially false, fictitious, and fraudulent statements and representations; and did make and use any false writing or document knowing same to contain any materially false, fictitious, or fraudulent statement or entry; to wit, in that the defendants knowingly and willfully caused the below described false International Certificates of Veterinary Inspection to be submitted to the United States Department of Agriculture (USDA) for endorsement by a USDA Endorsement Officer, said Certificates being false in that most of the cattle listed on the Certificates had not been tested for bovine disease as represented in the Certificates, as set forth below:

| Count | Submitted to USDA On or About | False International Certificate of Veterinary Inspection No. | For Export To |
|---|---|---|---|
| 2 | 11/08/2016 | 1714A00249 | Mexico |
| 3 | 11/23/2016 | 1714A00617 | Mexico |
| 4 | 11/28/2016 | 1714A00642 | Mexico |

11

| 5 | 11/28/2016 | 1714A00643 | Mexico |
|---|---|---|---|
| 6 | 12/16/2016 | 1714A00797 | Mexico |
| 7 | 12/16/2016 | 1714A00798 | Mexico |
| 8 | 09/22/2017 | 1714A03115 | Mexico |
| 9 | 10/02/2017 | 18CA00400028374 | Canada |
| 10 | 05/01/2018 | 1814A01671 (reissued) | Qatar |
| 11 | 05/01/2018 | 1814A01681 (reissued) | Qatar |
| 12 | 02/07/2020 | 2014A01177 | Qatar |
| 13 | 02/10/2020 | 2014A01184 | Qatar |
| 14 | 02/14/2020 | 2014A01217 | Qatar |

All in violation of Title 18, United States Code, Section 1001 and Section 2.

**THE GRAND JURY FURTHER CHARGES:**

**COUNTS 15 - 25**
**(Wire Fraud)**

30.  For purposes of Counts 15 thru 25 of this Indictment, the allegations set forth in paragraphs 1 - 14, and 18 - 26 are incorporated herein.

12

31. On or about the dates set forth below, in the Middle District of Pennsylvania and elsewhere, the defendants,

**DANIEL GUTMAN and BENJAMIN GUTMAN**,

having intentionally devised a scheme and artifice to defraud the buyers of Gutman Brothers cattle, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did cause to be transmitted by means of wire communication in interstate and foreign commerce any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme and artifice; to wit, in that the defendants and their conspirators caused the following interstate and international wire transfers of money to be sent to Gutman Brothers bank accounts at the Peoples Bank in York, PA, in furtherance of their scheme to defraud:

| Count | On or About | Related ICVI | Wire Transfer From | Amount |
|---|---|---|---|---|
| 15 | 11/22/16 | 1714A00617 | Mexico | $200,000 |
| 16 | 11/22/16 | 1714A00617 | Mexico | $71,450 |
| 17 | 11/28/16 | 1714A00642 | Mexico | $400,000 |

| | | | | |
|---|---|---|---|---|
| 18 | 11/29/16 | 1714A00643 | Mexico | $290,000 |
| 19 | 12/13/16 | 16PA925681 | Puerto Rico | $57,747 |
| 20 | 12/14/16 | 1714A00798 | Mexico | $200,000 |
| 21 | 12/16/16 | 1714A00798 | Mexico | $136,200 |
| 22 | 09/26/17 | 1714A03115 | Texas | $342,090 |
| 23 | 10/05/17 | 18CA00400028374 | Canada | $131,980 |
| 24 | 04/17/18 | 1814A01671 (reissued) 1814A01681 (reissued) | Qatar | $5,346,712 |
| 25 | 03/16/20 | 2014A01177 2014A01184 2014A01217 | Qatar | $308,400 |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

**THE GRAND JURY FURTHER ALLEGES:**

**NOTICE OF FORFEITURE**

32. Counts 15 through 25 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging

14

forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

33. Upon conviction of any Wire Fraud offense in Counts 15 thru 25 of this Indictment, the defendants,

**DANIEL GUTMAN and BENJAMIN GUTMAN,**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the Wire Fraud offense(s), including but not limited to $7,484,579 in United States currency.

34. If any of the property described above, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty,

15

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States code, Section 2461(c).

A TRUE BILL

_____
Grand Jury Foreperson

DAVID J. FREED
United States Attorney
Middle District of Pennsylvania

_____
By: AUSA Kim Douglas Daniel

Date: 11/18/2020